(5 Misc. Rep. 537.)

### WOODEN v. WESTERN NEW YORK & P. R. CO.

(Superior Court of Buffalo, General Term.   November 14, 1893.)

1. MASTER AND SERVANT—NEGLIGENCE—ASSUMPTION OF RISK.
   Where it is left to the judgment of the conductor whether he shall take a train over a difficult pass as it is made up, or whether he shall detach a part, or call for extra help, a brakeman, having notice of such authority vested in the conductor, but not having equal facilities for determining the danger, does not assume the risk.

2. SAME—VICE PRINCIPALS.
   In such case the conductor is a vice principal, and not a fellow servant of the brakeman.

3. SAME—BURDEN OF PROOF.
   In an action against a master for the negligent killing of a servant it is incumbent on defendant to prove that deceased knew, or was bound to know, in time to enable him to decline to continue in the service, that defendant would select methods which were unsafe.

Motion for new trial on exceptions.

Action by Laura Wooden against the Western New York & Pennsylvania Railroad Company.   Plaintiff was nonsuited, and moves for a new trial on exceptions ordered to be heard in the first instance at general term.   Granted.

Argued before TITUS, C. J., and WHITE, J.

Harlow C. Curtiss, for the motion.
John G. Milburn, opposed.

WHITE, J.   The plaintiff is the widow of George W. Wooden, who was killed at or near Parker's station in the state of Pennsylvania, January 3, 1890, while working as a brakeman on one of the defendant's trains of freight cars, in consequence of the train leaving the track while descending from what is known as "Keating Summit" on the line of its railroad.   The case has been twice tried, the first time before Judge Titus and a jury in May, 1891, when the plaintiff was nonsuited, and the case was sent to the general term in the first instance on exceptions taken by the plaintiff during the progress of that trial.   That nonsuit was set aside, and a new trial ordered by the general term, (16 N. Y. Supp. 840,) Beckwith, who was then chief judge writing an opinion, in which it was held that in the business of taking the ill-fated train over the mountain when Wooden, the brakeman, lost his life, Goodwin, the conductor, was the alter ego of the defendant, and that the evidence in the case required its submission to the jury.   After the retirement of Judge Beckwith from the bench, the defendant moved for a reargument of the case, and on that motion the author of this opinion wrote in favor of granting it, on the ground that, according to the record, the relation which existed between Goodwin and Wooden was that of coservants, and that the decision which had been made by the general term in that respect was erroneous.   The motion for a reargument was denied, (18 N. Y. Supp. 768,) Judge Hatch writing an opinion, in which the law as expounded by Judge Beckwith in ordering a new trial was

v.25N.Y.S.no.8—62

adopted as the law of the case; so that it has been twice solemnly decided by this court that the relation which existed between Goodwin and Wooden was that of master and servant, and not that of fellow servants, and that the evidence given by the plaintiff on the first trial required the submission of the case to the jury. A second trial was had before Judge Hatch and a jury in December, 1892, and the plaintiff was again nonsuited. She now seeks another trial on exceptions taken during the progress of the last one, and sent here for hearing in the first instance.

That the action is well brought by the plaintiff, as widow of the deceased, and that the complaint states a good cause of action, has been adjudicated by the court of appeals. Unless, therefore, there is absent from the record on which the motion for a new trial is now made some evidence essential to make out a cause of action in favor of the plaintiff which the former record contained, it is difficult to see why, under the two decisions of the general term of this court, already referred to, the case should not have been submitted to the jury on the last trial in conformity with the opinions of Judges Beckwith and Hatch in granting the motion to set aside the first nonsuit, and denying the motion for a reargument of that motion. The evidence adduced by the plaintiff upon the second trial seems to me to have been fully as satisfactory to establish a cause of action against the defendant as that given upon the first trial. For the purposes of this motion it may be assumed that on the first trial the evidence would not have justified the jury in finding as a fact that the deceased brakeman knew, or ought to have known, of the rules and regulations adopted and promulgated by the defendant in reference to the management of trains in taking them over this mountain where Wooden lost his life, and that such fact appeared conclusively in the case on the last trial, although that would seem to have been a fair question for the jury on the first trial on the evidence of Goodwin, who testified, in substance, that at the time of the accident there was a standing order which had been posted for quite a length of time on bulletin boards at various points along the line, regulating the business in question, and leaving it to the judgment of the conductor as to whether he should take his train over as made up, or ask leave to detach a portion of it, or call for extra help. While something was said by the court on the last trial to the effect that on the first trial there was some evidence that the brake shoes were greased, or came in contact with oil which had dripped from the tanks, and thereby reduced the friction between the shoe and the rail, yet the substantial ground on which the case was withheld from the jury seems to have been, in the language of the judge who presided at the trial, that—

"The employes had notice in regard to taking the train over from the order, and, having notice of that fact, Wooden knew that the authority was vested in the conductor to determine whether the train would ["should"] be taken over or not; and, having knowledge of these conditions equally with the conductor, and he chose to go over under these circumstances attempted to take the train down the mountain, he must be held to have assumed these risks as an employe."

I am of the opinion that the rule of law invoked by the learned trial court against the plaintiff is not applicable to this case.    It is certainly well settled that, where a servant is informed of a risk involved in his work, and continues in it with that knowledge, ordinarily he must be held to have assumed the risk himself.    In this case it is true that the deceased knew of the authority vested in the conductor of the train by the defendant; in other words, he knew that the conductor was made by the defendant the sole judge as to whether or not it was safe to take the train as made up at Olean over Keating summit, and he knew that if the conductor deemed it safe it would be done that way; but it does not appear that the deceased knew, or had any opportunity to learn, all the facts upon which the conductor would make his determination.    It does not appear that he knew or could have known anything concerning the character, condition, or construction of the engine, tender, or any of the cars in the train except those particular ones on which he was called to labor; nor does it appear that he knew or could have known anything whatever as to the character or amount of freight in the train, except as to the part of the train on which he worked; nor does it appear that he could have exercised the privilege of declining to go over the mountain on the train if he had been so disposed; nor was he charged with the duty of inspecting or ascertaining the condition of the track. As to all these things it was the duty of the defendant to see that the track, the train, and the machinery, and the appliances and help for handling it were all suitable, safe, and sufficient for the purposes of the undertaking, and its failure so to do would constitute actionable negligence in favor of one injured in consequence of such failure.    In my judgment it was not the duty of the deceased to have informed himself as to the facts on which the determination of the defendant was to be or was based in deciding to take the whole train over the mountain as it attempted to do, and then to leave the train while it was going either up or down the mountain, and thus avoid the accident which caused his death, or voluntarily go on in the performance of his duty as a brakeman, and assume that risk.    If, in determining to do and in doing what was done in attempting to take the train over the mountain, Wooden and Goodwin had been fellow servants, the rule of law adopted by the trial court would have been the correct one.    To repeat the proposition herein announced as what I conceive to be the true one in language adapted in terms to the facts of this case, a servant assumes the risks involved in the use of unsafe methods and instrumentalities of which he has or is bound to have knowledge; but where, as in this case, the methods and instrumentalities were to be selected by the master as the exigencies of the business might demand at the moment of entering upon the particular part of the business then in hand, and the safety of such methods and instrumentalities depended on the selection then made by the master, the servant, without knowledge as to what the determination of the master was to be, did not assume the risk of a selection of the unsafe methods and instrumentalities by the mas-

ter. Furthermore, it was incumbent upon the defendant to prove that the deceased knew or was bound to know in time to enable him to decline to continue in service that the defendant would select methods and instrumentalities which were unsafe, and there is no such proof in the record. It will not be profitable to review or discuss at length the decisions cited by the respective counsel in support of the propositions of law contended for by them if I am right as to the effect of the evidence given on the two trials, and if, as I believe, a recovery by the plaintiff is not barred on the ground that the deceased assumed the risk which resulted in his being killed. There can be no serious disagreement as to the rules of law which ordinarily apply as between master and servant and fellow servants. My conclusion is that the motion for a new trial should be granted, with costs to abide the event.

TITUS, C. J. I concur with my associate in the conclusion reached by him. There is evidence that the track was not in good condition,—that the ties were old, and in some places rotten,—and I think the case should have been submitted to the jury on the whole case. Motion granted.